IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JULIA A. COWLEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-677 |
| ) | |
| LORETTA E. LYNCH, ) | |
| Attorney General, ) | |
| U.S. Department of Justice, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's motion for summary judgment. This case represents the consolidated complaints of four plaintiffs containing common issues of law and fact.

In October 2012 the Federal Bureau of Investigation ("F.B.I." or "Defendant") reorganized its National Center for the Analysis of Violent Crime ("N.C.A.V.C.") to closer align it with agency-wide priorities. Although roughly sixty employees worked in the N.C.A.V.C. at the time, the four plaintiffs allege the true purpose of the reorganization was to break up their "clique" because they spoke out about sex discrimination they had experienced. Because the plaintiffs have not shown any unlawful discrimination or retaliation by the F.B.I. and because

there is no genuine issue of material fact requiring resolution, Defendant is entitled to summary judgment.

Julia Cowley, Robert Drew, Susan Kossler, and Kimberly Quesinberry ("Plaintiffs") were four of roughly thirty Supervisory Special Agents ("S.S.A.") within the N.C.A.V.C.'s four Behavior Analysis Units. Between them, these units worked matters relating to Counter-Terrorism, Threat Management, Crimes Against Adults, Public Corruption, White Collar Crime, Crimes Against Children, Cyber Threats, and the Violent Criminal Apprehension Program. Hierarchically, the N.C.A.V.C. falls under the Investigative and Operations Support Section of the Critical Incident Response Group ("C.I.R.G.").

Prior to the N.C.A.V.C.'s reorganization on October 1, 2012, each plaintiff worked in the Crimes Against Adults ("C.A.A.") unit. Their complaints stem from their treatment prior to the reorganization, the reorganization itself along with its resultant shift in their duties away from C.A.A., and their unsuccessful transfer attempts following the reorganization. Due to common issues of law and fact presented in these cases, some allegations are raised by multiple plaintiffs. However, the individual complaints also contain unique allegations; it is to these that the Court turns first.

Julia Cowley began her F.B.I. employment on June 20, 1999, and was promoted to S.S.A. within the C.A.A. unit on January 3,

2010, where she served until the October 2012 reorganization. She alleges that during this time, the C.A.A. unit chief made decisions designed to benefit male employees. First, in September 2011, he chose not to assign her a request for assistance from the Oklahoma Bureau of Investigation after it requested Cowley's assistance by name. Instead, he chose to assign the task to an agent in the F.B.I.'s Oklahoma City Division.[1] Later, in March 2012, he assigned a task Cowley believes she should have handled to a member of another unit, which Cowley viewed this as further sex discrimination.[2] Cowley claims that throughout his tenure, her unit chief "repeatedly made disparaging remarks to [her] colleagues about her professional abilities"—especially between March and April, 2012. She alleges he considered her as part of an exclusive work "group," and expressed his disapproval that Cowley "always talked about work and…never brought up her children."

Robert Drew, the only male plaintiff, bases his complaint entirely on unlawful retaliation. After being hired in July 1996, he was promoted to S.S.A. and began work in the C.A.A. unit on December 10, 2006. Unlike the female plaintiffs, Drew

---

[1] Both Cowley's amended complaint and deposition fail to identify the sex of the Oklahoma City Division agent that received the assignment. For purposes of summary judgment, where all reasonable inferences must be drawn in favor of the party opposing the motion, see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the Court assumes the agent is male.

[2] Again, Cowley's amended complaint and deposition do not identify the sex of the agent assigned this task. See Matsushita, supra n. 3.

continued work in the C.A.A. unit following the October 2012 reorganization. Drew alleges the F.B.I. retaliated against him because he supported the female plaintiffs as they negotiated the F.B.I.'s Equal Employment Opportunity ("E.E.O.") process.

Susan Kossler was the longest-tenured of the four Plaintiffs at the time of the events giving rise to their claims. First hired on April 22, 1990, Kossler entered the N.C.A.V.C. as an S.S.A. in January 2007 and began work in the C.A.A. unit in February 2009. Kossler states her assignment to the C.A.A. unit was the "capstone" of her F.B.I. career. Kossler alleges she began to be subjected to sex discrimination shortly after she was assigned to the C.A.A. unit. Specifically, she interpreted a comment made by the C.A.A. unit chief to Plaintiff Quesinberry about Quesinberry needing to "have a couple kids to settle her down" as also directed at herself because she too had no children.

Kimberly Quesinberry was hired by the F.B.I. on March 3, 1996, and was promoted to S.S.A. in July 2006. Like Kossler, she began work in the C.A.A. unit in February 2009. Other than her unit chief's suggestion that she have children to settle her down, Quesinberry does not allege any other discrimination or retaliation *against her* prior to the October 2012 N.C.A.V.C. reorganization. Her amended complaint does reference an official travel request that was delayed prior to its approval. The delay

was at least partially due to her unit chief's consideration of two male employees for the assignment. However, this bare assertion regarding a routine request *that was granted* cannot reasonably be construed as a plausible allegation of sex discrimination.

Collectively, Plaintiffs allege they experienced discrimination and retaliation even prior to the October 2012 reorganization; specifically, Cowley, Kossler, and Quesinberry ("the female Plaintiffs") allege they were treated as a problematic "clique" and that they endured the offensive conduct of both their unit chief and coworkers. However, their complaints speak in generalities, with little to no specificity regarding their allegations. The female Plaintiffs allege their unit chief referred to them as "princesses" and "prima donnas," but do not state when or where these comments took place, nor do they allege how frequently such comments were made. They complain about the distribution of "The Game," a book described as an instructional manual for "pickup artists," within the C.A.A. unit, and about comments made by a male colleague who "[got] laid" and convinced a waitress to expose her breasts by posing as a porn producer, but the female Plaintiffs do not allege even the most basic details concerning these incidents.

The Court next turns to Plaintiffs' complaints stemming from the N.C.A.V.C. reorganization in October 2012, after which

only Drew remained in the C.A.A. unit. Cowley and Quesinberry stayed in their previous unit, but the unit's mission shifted from C.A.A. to Cyber Threats, Threat Management, Public Corruption, and White Collar Crime. Kossler was transferred to the Crimes Against Children unit.

The reorganization was first set in motion in January 2011, roughly eighteen months prior to its announcement, when the C.I.R.G. (two levels above the N.C.A.V.C. in the F.B.I. hierarchy) began seeking ways to better align the N.C.A.V.C. with the F.B.I.'s priorities. It was announced in September 2012 and took effect on October 1, 2012. Each unit within the N.C.A.V.C. had its assigned programs changed as a result of the reorganization; some units added new programs to pre-existing ones while others had programs removed from their purview altogether. Of particular note here, the C.A.A., Cyber Threats, and Threat Management programs were moved outside the units in which they existed prior to the reorganization. Thus, while Drew continued to work within the (new) C.A.A. unit, the female Plaintiffs were all required to work in different areas.

Plaintiffs allege their post-reorganization annual performance ratings resulted from sex discrimination and retaliation. The F.B.I.'s rating system contains five overall ratings: Outstanding, Excellent, Successful, Minimally Successful, and Unsuccessful. The annual performance ratings at

issue are the ones each plaintiff received in October 2012 (the same month as the reorganization): Cowley was rated Excellent; Drew, Kossler, and Quesinberry were all rated Outstanding.

Plaintiffs further allege their unsuccessful transfer requests resulted from sex discrimination and retaliation. On March 8, 2013, Drew was transferred to the Strategic Information and Operations Center ("S.I.O.C."), another unit within the C.I.R.G. He later applied for the F.B.I.'s relocation incentive—twenty percent of an employee's base pay—but his request was denied because the new duty station was less than 50 miles from his previous one. Later in 2013, Drew, Kossler, and Quesinberry all unsuccessfully applied for a transfer to the Operational Technology Division ("O.T.D.").

In early 2013, the F.B.I. acted on complaints lodged by the female Plaintiffs with the F.B.I.'s Inspection Division and the Department of Justice's Office of the Inspector General. The F.B.I. directed its Inspection Division to conduct a special inspection of the entire N.C.A.V.C., including an independent investigation of the female Plaintiffs' complaints. The inspection took place from April 8-18, 2013. Thereafter, the inspection report recommended that Plaintiffs each receive a "Loss of Effectiveness" ("L.O.E.") designation which, if acted upon, would precipitate a management-directed transfer. Although Cowley and Drew avoided the L.O.E. designation, both Kossler and

Quesinberry were so designated and subsequently transferred; Kossler to the Intellectual Property Rights Unit and Quesinberry to O.T.D.

Plaintiffs filed their complaints under Title VII of the Civil Rights Act of 1964, alleging sex discrimination and retaliation.[3] They allege their treatment by N.C.A.V.C. management, the N.C.A.V.C. reorganization, the special inspection, and their unsuccessful transfer requests were part of a discriminatory F.B.I. plan to break up their "clique." Following discovery, Defendant now moves for summary judgment.

"As amended, Title VII of the Civil Rights Act of 1964 creates a right of action for…federal employees alleging employment discrimination on the basis of race, color, religion, sex, or national origin." Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006). See 42 U.S.C. § 2000e-16(c). Under Title VII, "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, it is unlawful for an agency to discriminate against an employee in retaliation for an employee's exercise of his or her rights under Title VII. Id. at

---

3 Drew's case proceeds based on his initial complaint. The Court dismissed the initial complaints of Cowley, Kossler, and Quesinberry on September 5, 2014—they proceed on their amended complaints.

§ 2000e-3(a), see also Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008).

Plaintiffs' Title VII claims are subject to the familiar burden-shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, Plaintiffs bear the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If they succeed, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for its actions. Id. at 253. Assuming Defendant successfully carries its burden, "the plaintiff [has] an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

To establish a prima facie case of sex discrimination, Plaintiffs must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment." Gerner v. Cnty. of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012). This Court "view[s] the facts in the light most favorable to, and draw[s] all reasonable inferences in favor of, the nonmoving party."

E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009).

Additionally, "[a]ll employees, private-sector or federal, alleging [discrimination under Title VII] must…exhaust their administrative remedies before exercising" their right of action. Laber, 438 F.3d at 415. Exhaustion includes the requirement that federal employees initiate contact with an Equal Employment Opportunity ("E.E.O.") counselor within 45 days of the date of an alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1).

Only Plaintiffs' timely allegations—that is, those for which they exhausted their administrative remedies—will be considered as part of Plaintiffs' sex discrimination claim. The female Plaintiffs first made contact with an E.E.O. counselor on October 17, 2012. Therefore, allegations of discrete act sex discrimination that occurred more than 45 days prior—that is, before September 2, 2012—are time-barred. In other words, Plaintiffs' frustrations with, and disapproval of, C.A.A. management prior to September 2, 2012, cannot form the basis of a valid discrete act sex discrimination claim under Title VII. Even if the female Plaintiffs *had* made timely contact with an E.E.O. counselor, none of their pre-September, 2012, discrete act allegations amounts to an adverse employment action under

Title VII. Put simply, the female Plaintiffs' pre-September 2, 2012, allegations are both time-barred and insufficient.

Plaintiffs correctly state that untimely allegations of discrete acts may still be used as background information for a hostile work environment claim. When a plaintiff alleges she was subjected to a hostile work environment, "[t]he unlawful employment practice…cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). However, to prevail on a hostile work environment claim, Plaintiffs must prove they experienced harassment that "was (1) unwelcome, (2) based on [her sex], (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [Defendant]."[4] Cent. Wholesalers, Inc., 573 F.3d at 175. Defendant's conduct must be "severe or pervasive" because "Title VII does not create a general civility code in the workplace; it only proscribes behavior that is so objectively offensive as to alter the conditions of the victim's

---

4 A hostile work environment for purposes of Title VII is one that is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Morgan, 536 U.S. at 116 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

employment." Mosby-Grant v. City of Hagerstown, 630 F.3d 326 (4th Cir. 2010).

A hostile work environment under Title VII was not created when Quesinberry was told to "have a couple kids" in order to settle down or when the female Plaintiffs were referred to as "princesses" and "prima donnas." Neither did a coworker's comments about "getting laid" or his account of convincing a waitress to expose her breasts by acting as a porn producer during an official deployment create a hostile work environment. Even assuming these comments were made frequently, they are not sufficiently "severe and pervasive" to constitute a hostile work environment under Central Wholesalers.

"The Game" was distributed because of its views on behavior observation and exploitation. Whether it was actually a useful training aid is irrelevant here. That some (or most) of its contents were sexual in nature and offensive does not make its distribution a form of sexual harassment, especially for F.B.I. employees for whom exposure to offensive materials is routine. Distribution of "The Game" in this context is not the type of behavior that constitutes a hostile work environment under Title VII.

The Court now turns to the heart of this case, the female Plaintiffs' timely sex discrimination allegations: specifically, the October 2012 N.C.A.V.C. reorganization and the F.B.I.'s

special inspection, including the subsequent L.O.E. recommendations. Acknowledging that the female Plaintiffs are members of a protected class and accepting arguendo that their job performance was satisfactory, they fail to establish a prima facie case of sex discrimination because they have shown no adverse employment action taken against them. Moreover, even if Kossler's and Quesinberry's L.O.E. transfers and the denials of their requested transfers to O.T.D. are construed as adverse actions, they have not shown that similarly-situated male employees received more favorable treatment.

As stated previously, the N.C.A.V.C. is comprised of four units. The disputed reorganization in October 2012 affected the *entire* N.C.A.V.C., not just the female Plaintiffs and not just the C.A.A. unit to which they were assigned. The female Plaintiffs have not adequately supported their extraordinary claim that the entire reorganization was in fact a pretext for breaking up their "clique."

The female Plaintiffs repeatedly question the wisdom of the N.C.A.V.C. reorganization in light of the F.B.I.'s stated priorities. These arguments are unpersuasive here, where the issue before the Court is whether the F.B.I. discriminated against the female Plaintiffs due to their sex. Title VII does not empower courts to second-guess managerial decision making, see Burdine, 450 U.S. at 259 (Title VII "was not intended to

diminish traditional management prerogatives"), and the United States Court of Appeals for the Fourth Circuit has "recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization[.]" Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000) (addressing discrimination under the Age Discrimination in Employment Act). It is not enough for the female Plaintiffs to assert the F.B.I.'s mismanagement ultimately resulted in underqualified males filling positions for which they were best suited following a large-scale reorganization.[5] Thus, even if the female Plaintiffs had established a prima facie case of sex discrimination based on the F.B.I.'s decision to reorganize the N.C.A.V.C., the F.B.I.'s legitimate non-discriminatory reasons have not been drawn into question as being a pretext for discrimination and the claim would still fail under the McDonnell Douglas standard.

The female Plaintiffs allege the change in their assigned duties following the N.C.A.V.C. reorganization amounts to an adverse employment action, even though none of them experienced a reduction in pay or position. In support of this argument, they cite a 2012 opinion of the United States Court of Appeals for the District of Columbia Circuit in which that court held

---

5 Moreover, unsupported conclusions (such as Cowley's assignment to the Cyber unit being "a ridiculous perversion of management placement intended exclusively to ruin her career") are given no weight by the Court.

"reassignment with significantly different responsibilities generally indicates an adverse action." <u>Youssef v. Fed. Bureau of Investigation</u>, 687 F.3d 397, 401 (D.C. Cir. 2012). Although this statement alone is persuasive, the facts in <u>Youssef</u> are quite different from this case. As a result of a reorganization, Youssef was involuntarily transferred from a position where he "coordinated the activities of a number of multi-agency groups," to a temporary position that processed and reviewed written materials. <u>Id.</u> at 399-400. One of his new co-workers was four grade levels below him, and even his supervisors held lower grade levels than him. This is in stark contrast to the female Plaintiffs here; they continued to work within the N.C.A.V.C. following its reorganization and only the subject matter of their assignments was altered. For these reasons, <u>Youssef</u> does not support the female Plaintiffs' claim that their new assignments following the N.C.A.V.C. reorganization amounted to an adverse employment action.

    The female Plaintiffs were similarly not subjected to an adverse employment action when the F.B.I. directed its Inspection Division to conduct a special inspection of the N.C.A.V.C. In fact, the inspection likely resulted from Plaintiffs' complaints. It is certainly not discriminatory for the F.B.I. to inspect an office that generates a large amount of complaints. Just like the reorganization, the special inspection

was not targeted at any one (or four) employees; it was a comprehensive inspection of the entire N.C.A.V.C. Even if the female Plaintiffs had established a prima facie case of sex discrimination based on the special inspection, they have not put forth adequate evidence to create a genuine issue of fact as to whether the F.B.I.'s nondiscriminatory reasons for the inspection were actually a pretext for sex discrimination.

The special inspection report recommended each plaintiff receive an L.O.E. designation, though only Kossler and Quesinberry were actually transferred as a result of these recommendations.[6] Transfer *recommendations* cannot constitute an adverse employment action, and the transfers of Kossler and Quesinberry to parallel positions without a change in salary, pay grade, or any other term of employment also fail to qualify. In fact, Quesinberry's transfer following her L.O.E. designation was to O.T.D., the very unit to which she had previously applied. Thus, Plaintiffs cannot establish a prima facie case of sex discrimination based on their transfers because none of them experienced an adverse employment action. Even if Plaintiffs had established a prima facie case, the F.B.I. presented a substantial legitimate nondiscriminatory reason for the L.O.E. designations—Plaintiffs disruptive and unprofessional behavior—

---

6 When the L.O.E. designations were made, Cowley and Drew were already outside the N.C.A.V.C.'s future plans: Cowley had been selected for a transfer to the Laboratory Division and Drew was already working in the S.I.O.C.

and Plaintiffs have not established a genuine issue of fact as to whether this reason was a pretext.

Plaintiffs Drew, Kossler, and Quesinberry allege sex discrimination and retaliation caused the F.B.I. to deny their transfer requests during the time leading up to and immediately following the October 2012 N.C.A.V.C. reorganization.[7] Assuming arguendo that the denial of their transfer requests qualifies as an adverse employment action, Kossler's and Quesinberry's sex discrimination claims still fail because they have not shown similarly-situated employees outside their protected class that were treated differently. Moreover, the F.B.I. has articulated legitimate nondiscriminatory reasons for these denials—specifically, budgetary restrictions due to sequestration and the resultant cancellation of three job announcements—and there is no indication these reasons are a pretext.

In sum, because the female Plaintiffs failed to demonstrate an adverse employment action or identify similarly-situated male employees that were treated differently, their sex discrimination claims fail.

Even though Plaintiffs have not established a prima facie case of sex discrimination, it would still be unlawful for the F.B.I. to retaliate against them for protected communications

---

[7] Drew only alleges retaliation, Kossler and Quesinberry allege sex discrimination as well as retaliation. Plaintiffs' retaliation claims are addressed infra.

they made to an E.E.O. representative. Regardless of the merit of their complaints, communication with an E.E.O. representative itself is protected and retaliation is unlawful. To establish a prima facie case of retaliation, Plaintiff must show "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action."[8] Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008).

Although status-based discrimination claims (such as sex discrimination) only require that unlawful discrimination be a "motivating factor" for an employer's actions, retaliation claims are subject to a higher "but for" causation standard under which Plaintiff must show the causal link between her protected activity and her removal is so close that the removal would not have occurred but for the protected activity. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013).

For the reasons previously stated, the female Plaintiffs have not shown any adverse action taken by the F.B.I. against them. Even if Plaintiffs did allege an adverse employment action, they have not shown any causal connection between their protected activity and the alleged adverse action. A fortiori,

---

[8] Here, as in Ziskie, Plaintiff's retaliation claim fails regardless of whether this Court applies the "adverse personnel action" standard or the broader "materially adverse" standard of Burlington N. & Santa Fe R.R. v. White, 548 U.S. 53 (2006), which applies in the private sector. It is therefore unnecessary for this Court to decide whether the "materially adverse" standard applies to federal employees.

they have not met the higher "but for" standard of causation required by the Supreme Court in Nassar. Therefore, their retaliation claims also fail with regard to the allegations comprising their sex discrimination claims.

Drew's retaliation claim also fails. Even assuming his transfer to the S.I.O.C. could qualify as an adverse action, he has not shown a causal connection between his protected activity and the transfer to withstand Nassar's "but for" causation standard. Thus, he has failed to establish a prima facie case of retaliation.

Because Plaintiffs have not shown any adverse employment action taken against them or that employees outside their protected class were treated more favorably, they cannot establish a prima facie case of sex discrimination. Since no Plaintiff has shown severe and pervasive harassment by the F.B.I., their hostile work environment claims also fail. Further, because they have not shown a sufficient causal connection between what they allege to be adverse action and their protected E.E.O. activity, their retaliation claims fail as well. Therefore, under McDonnell Douglas summary judgment

must be entered in favor of Defendant.

An appropriate order shall issue.

                                            /s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
August 21, 2015